**Theodore J. CATLETTI, Plaintiff,**

**v.**

**COUNTY OF ORANGE, Joseph Rampe, sued in his individual capacity; H. Frank Bigger, sued in his individual capacity; John E. Thompson, sued in his individual capacity, Defendant.**

**No. 01 Civ 8530(CLB).**

United States District Court, S.D. New York.

June 24, 2002.

---

Thorton, Bergstein & Ullrich, LLP, Chester, NY, for plaintiff.

· McCabe & Mack, LLP, Poughkeepsie, NY, LeBoeuf, Lamb, Greene & MacRae, LLP, Albany, NY, Eptein B & G, PC, New York City, for defendants.

## Memorandum and Order

BRIEANT, District Judge.

By motion heard June 14, 2002, defendants seek an order pursuant to F.R.Civ.P. 56 granting summary judgment in this civil rights action alleging violations of Plaintiff's First Amendment rights.

### Factual Background

The following facts are undisputed, or assumed for purposes of the motion. On September 19, 2001, Mr. Theodore Catletti, a former employee of the County of Orange, filed his Complaint in this lawsuit. On November 2, 2001, Mr. Catletti died and on February 22, 2002, this Court granted the motion of Antoinette Catletti, widow and Administratrix of the Estate of Theodore J. Catletti, permitting her substitution as Plaintiff pursuant to F.R.Civ.P. 25(a).

From 1992 until his termination on July 24, 2001, Mr. Catletti was the Jail Administrator, at the Orange County Correctional Facility ("the jail"). In this capacity, Mr. Catletti was responsible for the general management and oversight of the everyday operations of the jail. The position is not classified under New York's civil service laws and the occupant serves at the pleasure of the Sheriff.

Defendant the County of Orange is a municipality organized pursuant to the laws of the State of New York. Defendant Mr. Joseph Rampe, sued in his individual capacity, was the Orange County Executive and the chief operating officer of the County. Defendant Mr. H. Frank Bigger, sued in his individual capacity, was the Orange County Sheriff and Mr. Catletti's supervisor during the relevant period in this Complaint. Defendant Mr. John E. Thompson, sued in his individual capacity, was the Undersheriff for the County of Orange.

On June 7, 2001, Mr. Catletti testified under oath as a fact witness in the United States District Court for the Southern District of New York, in litigation concerning the termination of two nurses employed at the jail, Lurana Berweger, R.N. and Susan Menon, R.N., ("the Nurses") who claimed that they were discharged from their employment unlawfully. *See Berweger v. County of Orange*, 99 Civ. 4717(CM). Mr. Catletti testified that Mr. Rampe played a substantial part in the decision by the County to terminate the nurses' employment. On June 11, 2001, the jury awarded the nurses $2.2 million in damages, including one million dollars in punitive damages against Rampe.

One day after Mr. Catletti testified in Federal court, a consulting firm hired by the County to investigate the Sheriff's Department told Catletti that he was being investigated for his receipt in 1997 of personal blood tests performed on him without charge by the jail's medical staff. In a memorandum dated July 8, 1998, the Nurses at the jail told Defendants that as directed by the jail's medical contractors and as a goodwill gesture, medical staff had routinely provided jail personnel, including Mr. Catletti with blood tests, vaccinations, medications, and other minor first aid treatment. On July 12, 2001, Ms. Berweger told Defendant Bigger that the jail's medical contractors had performed these procedures for jail staff and family members and that Ms. Menon had permission to do so without billing the County or the staff members for them. On July 23, 2001, Defendant Thompson served Mr. Catletti with formal discipline terminating him from his employment as Jail Administrator. This initial termination letter stated that in February and March 1997, Mr. and Mrs. Catletti had inappropriately received medical services from a company with which the County had contracted to ser-

vice inmates, and such acts constituted the basis for Mr. Catletti's termination.

On July 24, 2001, Mr. Catletti received a revised termination letter which set forth no reason for his termination.

In the Complaint, Plaintiff alleges that Defendants sought to terminate Mr. Catletti in bad faith, intending to retaliate against him for having testified truthfully in the *Berweger* case that Rampe was responsible for firing unconstitutionally two County employees. Plaintiff alleges that Defendants singled out Mr. Catletti for punishment although they knew that numerous other County employees and their spouses had received the same free medical services over the years.

Plaintiff's Complaint states one claim: by retaliating against Mr. Catletti for testifying truthfully in federal court, Defendants violated Mr. Catletti's right to free speech as protected by the First Amendment of the United States Constitution, made actionable through 42 U.S.C. § 1983. Plaintiff seeks a jury trial, compensatory and punitive damages and fees and costs.

The standards for granting summary judgment are so well known that no citation is necessary. The movants' burden will be satisfied if they can point to the absence of evidence to support an essential element of the non-moving party's claim. *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir.1995). In evaluating the record to determine whether there is a genuine issue as to any material fact, "the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *see also Allen v. Coughlin*, 64 F.3d 77, 80 (2d Cir.1995).

■ Defendants contend that as a matter of law, Mr. Catletti's testimony in fed-

eral court was not constitutionally protected speech because the testimony did not address a matter of "public concern" within the meaning of the First Amendment case law, and because a government employer's right to run efficient government operations outweighs an employee's right to free speech, especially where the employee is a policymaker. Defendants also contend that the individual Defendants are entitled to Qualified Immunity.

As to the first contention, Defendants are mistaken, perhaps because of the unnecessary reference in the complaint to the First Amendment, which imports caselaw to the effect that the speech of a policymaker employed in local government is subject to a balancing test under *Pickering v. Bd. of Educ. of Township High School* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) and its extensive progeny. *Pickering* and the First Amendment are both inapplicable to this case, although were this Court to apply that test, we would find that the sworn testimony did as a matter of law address a matter of public concern. The Nurses who prevailed in the *Berweger* case were fired for speaking out publicly about, among other things, inadequate care and treatment of mentally ill inmates at the jail. This is clearly a matter of public concern. Catletti contended he was fired for testifying that the Nurses were fired for their whistle blowing activity, and that in itself is also a matter of public concern, that the Defendants attempt to retaliate against loyal employees (the Nurses) who speak out on matters of public concern. But we need not reach the issue. The record shows that Catletti was fired, not for blabbing in the public square about Defendants' retaliation against the Nurses, but for *testifying* truthfully as a witness in this Court concerning facts relevant to a lawsuit of which the Court had jurisdiction.

As this Court pointed out in *Benedict v. Town of Newburgh* 95 F.Supp2d 136 (S.D.N.Y.2000), the Constitutional right to *testify* truthfully before any tribunal, especially a federal court is a protected Constitutional right wholly apart from the right under the First Amendment to sound off in the public square or at a meeting about matters of public concern. This right may be exercised freely without fear of retribution at the hands of a municipal employer, and is not subject to "balancing" under *Pickering*. This issue has arisen for the most part in criminal cases brought under §§ 241 and 242 of Title 18 of the United States Code, which are an analog to § 1983 of Title 42. The criminal statute, which is generally construed *in pari materia* with § 1983 was considered by our Court of Appeals in *United States v. Pacelli*, 491 F.2d at 1108, 1113–15 (2d Cir. 1974), where the court held unequivocally that the right to be a witness in a federal trial is a civil right secured by the Constitution and protected from infringement or deprivation by § 241. Once the right to testify truthfully has been determined to be a right secured by the Constitution and protected under 18 U.S.C. § 241, it is a *fortiori* within § 1983.

This issue was considered again in a criminal context in *United States v. Guillette*, 547 F.2d 743, 748 (2d Cir.1976) in which the court held:

This court in *United States v. Pacelli*, 491 F.2d 1108, 1113–15 (2d Cir.1974) held unequivocally that the right to be a witness in a federal trial is a civil right secured by the Constitution and protected from infringement or deprivation by § 241 ... We adhere to our holding in that decision ...

In *Pacelli* our Court of Appeals held:

"The Supreme Court has long made clear that certain rights are implicitly conferred by the Constitution's estab-

lishment of a national Government intended to be 'paramount and supreme within its sphere of action.' ... (Citation omitted) One of these is the right to testify at a federal trial at response to the request or command of a federal district court. Our federal government has a particular interest in assuring a prospective witness that he or she will be free to respond by attending the trial of a federal indictment as a witness without being prevented from doing so by threats, molestation or force. Otherwise, the foundations of federal justice would be undermined." (*Pacelli* at 1113)

Our Court of Appeals in *Pacelli* cited with approval *Foss v. United States,* 266 F. 881 (9th Cir.1920) as supporting the claim that the right to testify as a witness is secured by the Constitution or laws of the United States, without regard to the First Amendment. *Foss* involved a prosecution for murder of a witness because he had "been subpoenaed and intended to appear before the United States Commissioner in a contest between Carl E. Foss and the United States in the United States Land Office", a civil litigation to try title to real property. The Ninth Circuit held that "the right in question does not depend upon any of the amendments to the Constitution but arises out of the creation ... of a national government, paramount and supreme within its sphere of action." Obviously, in light of *Foss,* no principled difference can be suggested between the right to testify as a witness in a criminal prosecution and the right to testify in a civil lawsuit, as was the case in *Foss.*

Since the right to testify has its source in the Constitution independent of the First Amendment, logic confirms that the right to testify truthfully is not encumbered with the content limitations which have been grafted by the Supreme Court and others onto the First Amendment protection accorded to non-testimonial voluntary speech. Common sense permits of no other resolution of the issue. The law is entitled to every person's evidence. A witness testifies under the risk of prosecution for perjury should he or she give false or misleading information. Driven by the law to tell the whole truth, no witness should be buffeted by the contrary pressure to trim his or her testimony because of fear that a municipal employer might retaliate, and some court later find that although truthful, material and admissible, the testimony did not relate to a matter of public concern.

Defendants have directed the attention of the Court to the case of *Nonnemann v. City of New York* 174 F.Supp.2d 121, (S.D.N.Y.2001) which did apply the balancing test to testimony. That case was decided after *Benedict* and does not cite or distinguish *Benedict.* As here, the Complaint invoked only the First Amendment and Plaintiff apparently failed to distinguish for the Court the separate Constitutional protection for testimony as contrasted with ordinary public speech. *Nonnenmann* is regarded as wrongly decided, to the extent it declined to protect testimony from retaliation and this Court will not, and need not follow it. See *Gasperini v. Center for the Humanities, Inc.* 518 U.S. 415, 420 n. 10, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996).

The motion is denied for want of merit.

■ To the extent the individual defendants seek dismissal based on qualified immunity that branch of the motion is also denied. The right to testify was clearly established as long ago as 1920, and the *Benedict* decision was widely reported in Orange County prior to the actions taken.

It does appear there are too many defendants. On conclusion of discovery the

action should be dismissed as to any individual defendant who did not participate in the firing of Catletti. If counsel are unable to agree on this the Court will resolve it prior to jury selection.

Counsel are directed to confer and attend to any incomplete discovery, and shall select a trial jury before this Court on September 9, 2002 at 9:15 a.m., trial to proceed thereafter subject to prior criminal cases.

SO ORDERED.