Antionette CATLETTI as administratrix of the ESTATE OF Theodore J. CATLETTI, deceased, Plaintiff–Appellee,

v.

Joseph RAMPE, sued in his individual capacity, County of Orange, H. Frank Bigger, sued in his individual capacity, and John E. Thompson, sued in his individual capacity, Defendants–Appellants.

Docket Nos. 02–7775(L), 02–7793(CON).

United States Court of Appeals, Second Circuit.

Argued March 7, 2003.

Decided July 2, 2003.

Stephen Bergstein, Thornton, Bergstein & Ullrich, LLP, Chester, N.Y. for Plaintiff–Appellee.

Yvonne E. Marciano, LeBoeuf, Lamb, Greene & MacRae, LLP, (Robert J. Alessi, John D. Hoggan, Jr., on the brief), Albany, N.Y. for Defendant–Appellant Joseph Rampe.

Clare M. Sproule, Epstein, Becker & Green, P.C., New York, N.Y., for Defendants–Appellants H. Frank Bigger & John E. Thompson.

David L. Posner, McCabe & Mack LLP, Poughkeepsie, N.Y., for Defendant–Appellant County of Orange.

Before: WALKER, Chief Judge, JACOBS, and CALABRESI, Circuit Judges.

JOHN M. WALKER, Jr., Chief Judge.

Antionette Catletti, administratrix of the estate of Theodore J. Catletti ("Catletti"), brought suit against defendants Joseph Rampe, H. Frank Bigger and John E. Thompson, public officials in Orange County, New York, and against the County of Orange, alleging that defendants had violated Theodore Catletti's constitutional right of free speech by dismissing him from the post of jail administrator in retaliation for his truthful testimony in federal

court. The District Court for the Southern District of New York (Brieant, *Judge*) denied defendants' motion for summary judgment and defendants Rampe, Bigger and Thompson appeal, claiming that, as public officials, they are entitled to qualified immunity.[1] We affirm the ruling of the district court.

## BACKGROUND

Plaintiff Catletti served as prison administrator of the Orange County Jail between 1992 and his dismissal in 2001. As administrator, Catletti developed prison policy, hired and trained prison personnel, managed inmate care and heard their complaints, and prepared prison budgets. In Orange County, the prison administrator is hired by and serves at the pleasure of the elected Sheriff. During the relevant period, defendant Bigger was Sheriff, Thompson was his appointed Undersheriff, and Rampe was County Executive.

In 1998, two nurses, Lurana Berweger and Susan Menon, employed at the jail by a County medical contractor, wrote and distributed to public officials several letters criticizing the mental health services provided at the jail. The nurses were subsequently fired. In 1999, the nurses sued County Executive Rampe, among others, alleging that he had fired them in retaliation for their letters and in violation of their First Amendment rights. On June 7, 2001, the nurses called Catletti as a witness at the trial and he testified on matters of prison administration, problems with the mental health services, and Rampe's role in the nurses' firing.

On June 8, one day after Catletti testified, Holland & Knight ("H & K"), a consulting firm which had previously been retained by the County to investigate the Sheriff's department, informed Catletti that he was being investigated for his and his wife's receipt of blood tests performed by the jail medical staff more than three years earlier in 1997. H & K's report indicated that in 1998 Sheriff Bigger learned that the Catlettis had received the tests and that, although a bill for the services should have been sent to Catletti, no bill had been sent. According to a 1998 memo from nurses Berweger and Menon, the medical contractor had directed the nurses to provide medical services to jail personnel as "goodwill gestures." Despite his knowledge of the tests, Sheriff Bigger gave Catletti the highest possible marks on his performance review in 1998. The Catlettis reimbursed the County as soon as H & K raised the issue in 2001. H & K's preliminary findings regarding the Catlettis' receipt of medical services in 1997 were made public shortly after Catletti's testimony and in advance of the publication of the entire H & K report on June 25, 2001.

Catletti was suspended on June 18, 2001, the same day that the County and Rampe reached a post-trial settlement with Nurses Berweger and Menon for $1.2 million. On July 23, 2001, Sheriff Bigger sent Catletti a notice of dismissal which indicated that he was being fired because of the medical care he and his wife had received in 1997. The following day, July 24, he received a letter that rescinded the prior termination but then terminated Catletti again, without an explanation.

---

**1.** Although the County of Orange appears on the caption and briefs, as a municipality, it is not entitled to qualified immunity and therefore lacks a basis to appeal the district court's denial of summary judgment. *See Marshall v. Sullivan*, 105 F.3d 47, 53 (2d Cir.1996) ("The denial of summary judgment is ordinarily an interlocutory decision, not a 'final decision' appealable under 28 U.S.C. § 1291."). Lacking jurisdiction over any claims it might raise at this point, we do not discuss the County in this opinion.

On September 21, 2001, Catletti brought the present action under 42 U.S.C. § 1983, alleging that the County of Orange, Rampe, Bigger, and Thompson had violated his right to free speech by retaliating against him for his testimony. All defendants moved for summary judgment on the basis that Catletti's testimony was not protected because it was not of public concern and was disruptive to the administration of the County. The individual defendants, Rampe, Bigger and Thompson, also moved for summary judgment on the basis of qualified immunity. In addition, defendant Rampe claimed that summary judgment should be granted in his favor because he had not been involved in Catletti's termination. The district court denied the motion, holding that defendants' claim of qualified immunity is defeated by the clearly established constitutional right to testify at a trial. *See Catletti v. County of Orange,* 207 F.Supp.2d 225, 229 (S.D.N.Y.2002). The district court found that the right to testify is independent of the First Amendment, but noted that the First Amendment would also protect Catletti from retaliation for testifying because his testimony related to a matter of public concern. *Id.* at 228.

The individual defendants now appeal from the order to the extent that it denied them qualified immunity.

## DISCUSSION

▆▆▆ "Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" *Saucier v. Katz,* 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)). Under the collateral order doctrine, defendants claiming that they are entitled to qualified immunity as a matter of law are permitted to immediately appeal a district court's denial of summary judgment on the basis of qualified immunity. *Caldarola v. Calabrese,* 298 F.3d 156, 161 (2d Cir.2002). However, this is not the case when the existence of qualified immunity depends on disputed facts; "[d]eterminations of evidentiary sufficiency at summary judgment are not immediately appealable merely because they happen to arise in a qualified-immunity case." because such issues are "not truly separable from the plaintiff's claim." *Tolbert v. Queens College,* 164 F.3d 132, 138 (2d Cir.1999) (internal quotation marks and citations omitted).[2] We review questions of law *de novo. See Pierce v. Underwood,* 487 U.S. 552, 558, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988).

▆▆▆ A public official is entitled to qualified immunity when his or her conduct "did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hope v. Pelzer,* 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). "When considering the issue of qualified immunity we must first determine whether—viewed in the light most favorable to the injured party—the facts alleged demonstrate that the officer's conduct violated a constitutional right. If so, we must determine whether that right was clearly estab-

2. Appellant Rampe claims that summary judgment should have been granted in his favor because he was not involved in Catletti's firing. The district court determined that resolving this question required further discovery. Because this is a question of "evidentiary sufficiency," it is not appealable under the collateral order doctrine. *Tolbert,* 164 F.3d at 138; *see also Johnson v. Jones,* 515 U.S. 304, 319–20, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995).

lished." *Caldarola*, 298 F.3d at 160 (citation omitted).

In this case, appellants argue that Catletti has not stated a constitutional violation because (1) there is no independent constitutional right to testify and (2) under the First Amendment, Catletti fails to satisfy *Pickering v. Board of Education*'s requirements that the speech involve a matter of public concern and that the employee's interest in speaking outweigh the government's interest in the "efficiency of the public services it performs." 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). Because these are questions of law, *see Connick v. Myers*, 461 U.S. 138, 147–48 & n. 7, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), we have jurisdiction under the collateral order doctrine to consider them.

The district court held that defendants were not entitled to qualified immunity because the Federal Constitution provides a right to testify truthfully before a federal court. *See Catletti*, 207 F.Supp.2d at 229. According to the district court, this right to testify was "implicitly conferred by the Constitution's establishment of a national Government" and, in particular, the creation of federal courts. *Id.* at 228–29 (quoting *United States v. Pacelli*, 491 F.2d 1108, 1113 (2d Cir.1974)). The district court did not rely on the First Amendment in reaching its decision but did note in passing that, if it had to consider the First Amendment, it would have found that it also protected Catletti from retaliation. *See id.* at 228.

Although the district court may be correct that the Constitution implicitly confers a right to testify, we think that the explicit textual protections of the First Amendment provide better support for Catletti's right to testify than any protections implicit in the structure of the Constitution. In *County of Sacramento v. Lewis*, the Supreme Court held that

"[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." 523 U.S. 833, 842, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (internal quotation marks and citations omitted). Here also, the correct path for a court to follow is the First Amendment's explicit protection rather than a principle implied by the structure of the Constitution. We therefore consider Catletti's claims under the First Amendment.

Speech by a government employee is protected if "the speech [is] on a matter of public concern, and the employee's interest in expressing herself on this matter [is not] outweighed by any injury the speech could cause to 'the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Waters v. Churchill*, 511 U.S. 661, 668, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994) (quoting *Connick*, 461 U.S. at 142, 103 S.Ct. 1684, and *Pickering*, 391 U.S. at 568, 88 S.Ct. 1731).

The "threshold question" in evaluating public employee First Amendment claims is whether the speech is about "'a matter of public concern.'" *Piesco v. City of New York*, 933 F.2d 1149, 1155 (2d Cir.1991) (quoting *Rankin v. McPherson*, 483 U.S. 378, 384, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987)). Whether speech addresses a matter of public concern is determined "by the content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147–48, 103 S.Ct. 1684.

In this case the context of Catletti's speech—testimony offered at a trial—is significant. The Fifth and Third Circuits have held that truthful testimony provided

at trial is *per se* a matter of public concern. In *Johnston v. Harris County Flood Control District*, the plaintiff had testified in an employment dispute before the EEOC and the Fifth Circuit held that "[w]hen an employee testifies before an official government adjudicatory or fact-finding body he speaks in a context that is inherently of public concern." 869 F.2d 1565, 1578 (5th Cir.1989). The Third Circuit reached a similar result in *Green v. Philadelphia Housing Authority* when a government employee voluntarily testified at a bail hearing: "[T]he context of a courtroom appearance raises speech to a level of public concern, regardless of its content." 105 F.3d 882, 887 (3rd Cir.1997). According to the *Green* Court, any other rule would not only infringe "the first amendment right of the witness," but would also put " 'the judicial interest in attempting to resolve disputes by arriving at the truth ... in jeopardy.' " *Id.* (citing *Reeves v. Claiborne County Bd. of Ed.*, 828 F.2d 1096, 1100 (5th Cir.1987)).

The Seventh Circuit, on the other hand, declined to hold that trial testimony was automatically of public concern, noting that "airing private gripes in the form of a complaint or testimony cannot alter their status as private gripes." *Wright v. Ill. Dept. of Children & Family Servs.*, 40 F.3d 1492, 1505 (7th Cir.1994).

Although we analyze Catletti's claim under the First Amendment and not the right to testify that the district court discerned from the structure of the Constitution, we agree with the district court that uninhibited testimony is vital to the success of our courts' truth-seeking function. As we said in *United States v. Pacelli*, "the foundations of federal justice will be undermined" if witnesses are not able to testify freely. 491 F.2d 1108, 1113 (2d Cir.1974). The paramount importance of judicial truth-seeking means that truthful trial testimony is almost always of public concern. In the instant case, however, we need not decide whether the trial context renders testimony of public concern regardless of its content because the content of Catletti's testimony supports a finding that the speech is of public concern. Catletti's testimony concerned the provision of mental health services in the prison and whether County officials had fired nurses Berweger and Menon because of the nurses' letter about prison mental health services. Defendants argue that Catletti's testimony is not of public concern but rather related to "an employee grievance concerning internal office policy." *Connick*, 461 U.S. at 154, 103 S.Ct. 1684. We disagree.

The quality of mental health services provided in the County prison is plainly a matter of public concern. *Cf. Hale v. Mann*, 219 F.3d 61, 71 (2d Cir.2000) (holding that "the proper administration of State facilities for the incarceration of juveniles" is a matter of public concern). And although the nurses' claim involved the termination of their employment, the question of whether County officials had retaliated against two employee-whistleblowers in violation of the employees' First Amendment rights is a "matter of political, social, or other concern to the community." *Connick*, 461 U.S. at 146, 103 S.Ct. 1684.

After determining that Catletti's testimony was of public concern, we weigh his interest in expressing himself against any harm the speech could cause to "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id.* at 142, 103 S.Ct. 1684. In order to succeed on their qualified immunity claim at summary judgment, defendants must present sufficient evidence of harm to the interest of the state to prevail as a matter of law.

Defendants argue that because Catletti was a policymaking official, his testimony was especially prone to disrupt government functions. In *McEvoy v. Spencer*, this court held that "the policymaking status of the discharged or demoted employee is very significant in the Pickering balancing, but not conclusive." 124 F.3d 92, 103 (2d Cir.1997). Even if Catletti is considered a policymaker, however, defendants' claim fails because they have presented no evidence of disruption or even potential disruption.

Defendants Bigger and Thompson acknowledge that Catletti's testimony did not adversely impact his performance as jail administrator. Instead, they point to disruptions caused by the release of the H & K report shortly after Catletti testified. But Catletti did not release the report; defendant Rampe did. If the report was released as a means of retaliating against Catletti, that strengthens, not weakens, Catletti's claim that at least some of the defendants violated his right of free expression. Nor can we find, at this point in the litigation, that defendants Bigger and Thompson are absolved of liability because they were acting in response to the disruption caused by County Executive Rampe's retaliatory publishing of the H & K report. Defendants have thus failed to show that the "interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees" outweighs, as a matter of law, Catletti's interest in testifying truthfully at the nurses' trial. *Pickering*, 391 U.S. at 568, 88 S.Ct. 1731.

Having determined that the facts alleged by Catletti do state a First Amendment violation, we finally consider "whether that right was clearly established." *Caldarola*, 298 F.3d at 160 (citation omitted). A right is clearly established if "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). It has "long been established" that a government employee's right to speak on issues of public concern is protected from retaliation if the speech does not disrupt the administration of the government. *Dobosz v. Walsh*, 892 F.2d 1135, 1141 (2d Cir.1989); *see also Pickering*, 391 U.S. at 568, 88 S.Ct. 1731.

Thus, we find that the facts alleged in Catletti's complaint state a violation of a constitutional right that was clearly established at the time of the alleged violation. Accordingly, we hold that defendants are not entitled to qualified immunity.

## CONCLUSION

For the forgoing reasons, we affirm the district court's order denying defendants' motion for summary judgment.