Patrick A. KENNEDY,
Plaintiff–Appellee,

v.

Maria LEHMAN, Erie County Commissioner of Public Works, David Boehm, Erie County Senior Highway Engineer, Gerry Sentz, Erie County Director–Energy, Utility and Grant Management, Individually and in their official capacity and Erie County, New York, Defendants–Appellants.

No. 07–4442–cv.

United States Court of Appeals,
Second Circuit.

May 6, 2009.

Richard H. Wyssling, Buffalo, NY, for Plaintiff–Appellee.

Kristin Klein Wheaton, Interim First Asst. County, Attorney, Buffalo, NY, for Defendants–Appellants.

Present: WALKER, ROSEMARY S. POOLER, Circuit Judges, and LEWIS A. KAPLAN,[1] District Judge.

## SUMMARY ORDER

Defendants Maria Lehman, David Boehm, and Gary Sentz ("the Individual Defendants") appeal from the order, dated September 18, 2007, 2007 WL 2743457, of the United States District Court for the Western District of New York (Arcara, C.J.), which adopted the report and recommendation, dated June 27, 2007, of Magistrate Judge Jonathan W. Feldman, which: (1) granted the summary judgment motion of all defendants as to plaintiff Kennedy's due process and defamation claims; (2) denied the defendants' summary judgment motion as to Kennedy's First Amendment claim; (3) granted the motion of defendant County of Erie for qualified immunity;

1. The Honorable Lewis A. Kaplan, United States District Judge for the Southern District of New York, sitting by designation.

and (4) denied the motion of the Individual Defendants for qualified immunity. The only issue raised on this appeal is the denial of qualified immunity as to the Individual Defendants.

We assume the parties' familiarity with the events giving rise to the instant suit and we therefore set forth no detailed recitation of these. Plaintiff Patrick Kennedy was employed by the Erie County Department of Public Works from 1985 through October 2004. He attained the position of General Crew Chief in 2002. For some nine months beginning in July 2002, Kennedy was assigned to work out of a facility called the East Aurora Highway Barn and was supervised by Douglas Naylon, who held the title of Senior Highway Engineer.

Before and during Kennedy's tenure at East Aurora, the facility was subject to various investigations of alleged corrupt practices, especially involving the appropriation of public property for personal use. In December 2002 Naylon filed an employment discrimination complaint with the Erie County Division of Equal Employment Opportunity. This complaint set forth numerous alleged incidents of harassment alleged to be related to the investigations, several of which incidents are said to have been witnessed by Kennedy. Naylon was terminated from employment January 29, 2003 on the ground that he had recently failed a civil service examination for the position of Senior Highway Engineer. In June 2004 Naylon was indicted by Erie County on fifteen counts involving the theft and improper use of public property. On August 18, 2004 Naylon pleaded guilty in New York Supreme Court, County of Erie, to two misdemeanor counts of unauthorized use of a public vehicle.

On April 23, 2003 Kennedy filed an "Internal Complaint of Harassment, Discrimination or Retaliation" with the Erie County Department of Public Works. As with Naylon's complaint, this complaint sets forth a range of alleged acts of harassment arising out of the various investigations of the East Aurora facility. In May 2003 Kennedy went on medical leave because of the recurrence of the effects of a prior back injury. Kennedy remained on sick leave until October 23, 2004 when the County terminated his employment because he had been out of work on leave without pay for one year.

In July 2003 Kennedy filed a complaint in federal district court asserting claims under 42 U.S.C. Section 1983. Specifically, Kennedy alleged that various acts of harassment relating to the County's investigation of corruption at East Aurora had denied him due process and violated his First Amendment rights. Kennedy also asserted a state law defamation claim.

As noted above, Magistrate Judge Feldman granted summary judgment on Kennedy's due process and defamation claims, which ruling Kennedy has not appealed. Magistrate Judge Feldman, however, allowed Kennedy's First Amendment claim to survive because "[t]he record here pays tribute to many factual disputes as to what happened and whether or not plaintiff's speech was a motivating factor in the adverse employment conditions he allegedly suffered." Viewing Kennedy's First Amendment claim as involving speech and associational activities relating to Kennedy's support for Naylon, Magistrate Judge Feldman, quoting *Konits v. Valley Stream Central High School,* 2006 WL 224188 at *6 (E.D.N.Y. Jan.28, 2006), held that "assuming the factual disputes are resolved in plaintiff's favor, the unlawfulness of retaliating against a public employee for supporting a fellow employee in his claim of harassment and discrimination was 'reasonable and objectively apparent' " at the

time they occurred. Therefore, the Individual Defendants were not entitled to qualified immunity at the summary judgment stage. On the other hand, the County of Erie was held to be shielded by qualified immunity because Kennedy had not alleged any "policy or custom" instituted by the County sufficient to subject it to liability. District Judge Arcara accepted the magistrate judge's report and recommendation without substantial comment.

An interlocutory appeal from a denial of summary judgment on the basis of qualified immunity may be taken because "the qualified immunity issue should be resolved early in the proceedings since qualified immunity protects [a public official] from suit." *Cowan ex rel. Estate of Cooper v. Breen*, 352 F.3d 756, 760 (2d Cir. 2003). But a district court's denial of a claim of qualified immunity is immediately appealable only "to the extent that it turns on an issue of law," *Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), and a defendant "may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." *Johnson v. Jones*, 515 U.S. 304, 319–20, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995).

The Individual Defendants spend a good deal of their brief rearguing fact issues decided by the magistrate judge. Thus, they argue that Kennedy did not produce sufficient "tangible evidence" of the necessary causal link between his being named as a witness in Naylon's discrimination complaint and the allegedly adverse employment actions he suffered; that there is no evidence that they were aware that Kennedy had been named as a witness; and that Kennedy "did not adduce sufficient proof to create an issue of fact with respect to the Individual Defendants' mo-

tives in their conduct toward him." All of these issues plainly raise fact questions which are not properly considered on this appeal.

The Individual Defendants, however, have also raised an argument that warrants reversal. A grant of qualified immunity allows public officials to be "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). To defeat a claim of qualified immunity, therefore, a plaintiff must demonstrate the violation of a "clearly established" right, which means that "[t]he right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (citations omitted). This means that "the Second Circuit or the Supreme Court has recognized the right." *Anderson v. Recore*, 317 F.3d 194, 197 (2d Cir.2003) (quotation marks omitted).

In order to establish a First Amendment claim of retaliation, a public employee must show that "(1) his speech addressed a matter of public concern, (2) he suffered an adverse employment action, and (3) a causal connection existed between the speech and the adverse employment action." *Cobb v. Pozzi*, 363 F.3d 89, 102 (2d Cir.2004) (internal quotation marks omitted). In his complaint, Kennedy alleges rather vaguely that the defendants undertook a campaign of retaliation against him "because of his prior association of with

[*sic*] former Senior Highway Engineer Douglas Naylon." As Magistrate Judge Feldman recognized, expressive activity arising from a public employee's mere association with a co-worker does not amount to a matter of public concern because such activity only amounts to a matter of "personal interest." Magistrate Judge Feldman quoting *Konits v. Valley Stream Central High School District*, 394 F.3d 121, 125 (2d Cir.2005), also wrote, however, that "the Second Circuit [has] held [that] a public employee's willingness to be a potential witness in a co-worker's claim of employment discrimination [is] 'speech on a matter or public concern' deserving of First Amendment protection."

Notwithstanding the foregoing language in *Konits*, it is not clear that the fact that Kennedy was identified by Naylon as having been a witness to certain events set forth in Naylon's complaint amounted to protected activity by Kennedy. But we need not reach that question, for even assuming that *Konits* so held, the law of this Circuit as to whether a retaliation claim such as Kennedy's was actionable under the First Amendment was unsettled until that case was decided. In fact, *Konits* explicitly states as much:

> Prior to our decision today, there was a split among the district courts in this Circuit as to whether retaliation based on identification as a witness in a fellow employee's discrimination suit could give rise to a First Amendment cause of action. *Compare Nonnenmann v. City of New York*, 174 F.Supp.2d 121, 136 (S.D.N.Y.2001) *with Catletti v. County of Orange*, 207 F.Supp.2d 225, 229 (S.D.N.Y.2002). By our decision today, we resolve this split and hold that any use of state authority to retaliate against those who speak out against discrimination suffered by others, including witnesses or potential witnesses in proceedings addressing discrimination claims,

can give rise to a cause of action under 42 U.S.C. § 1983 and the First Amendment. To the extent that *Nonnemann* holds otherwise, it is overruled.

394 F.3d at 125.

*Konits* is a 2005 decision. The allegations of retaliation set forth in Kennedy's complaint took place in 2002 and 2003. Thus, Kennedy's First Amendment claim arising from alleged retaliation was plainly not "clearly established" at the time the Individual Defendants committed their alleged wrongdoing. *See Wilson v. Layne*, 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (qualified immunity analysis is made "in the light of pre-existing law"; internal quotation marks omitted).

Kennedy makes two arguments to the contrary, but they are both baseless. First, he cites to non-Second Circuit law pre-dating *Konits*. But this does nothing to establish the state of the law in the Second Circuit as of 2002 and 2003. Second, he correctly notes that discrimination against those who assist another in bringing claims under Title VII of the Civil Rights Act of 1964 has been outlawed by that statute since it became effective in 1965. From this, he concludes that "[t]he legal question of whether employee witnesses' rights were protected by Title VII or the First Amendment is not essential to the understanding of a reasonable public employee that witnesses to employment discrimination and harassment complaints are protected by law." But Kennedy cites nothing to support this assertion, which is not surprising when it is "the right the official *is alleged to have violated* [that] must have been 'clearly established.'" *Anderson*, 483 U.S. at 640, 107 S.Ct. 3034 (emphasis added). This is a First Amendment case, and therefore only Kennedy's First Amendment rights are relevant. Be-

cause the Individual Defendants did not violate a First Amendment right clearly established as of 2002, we conclude that they are entitled to qualified immunity, and the district court must be reversed. *See Pearson v. Callahan,* —— U.S. ——, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009) (enabling courts to answer qualified immunity questions by determining whether the right at issue was clearly established without deciding whether that right was violated).

For the reasons stated above, the judgment the district court is hereby REVERSED.