08-2529-cv
Taravella v. Town of Wolcott

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

August Term, 2008

(Argued: August 4, 2009            Decided: March 16, 2009)

Docket No. 08-2529-cv

- - - - - - - - - - - - - - - - - - -x

Denise A. Taravella,

               Plaintiff-Appellee,

          - v.-

Town of Wolcott, Thomas G. Dunn,
Douglas Coley,

               Defendants-Appellants.

- - - - - - - - - - - - - - - - - - -x

     Before:        JACOBS, Chief Judge, STRAUB and HALL,
                    Circuit Judges.

     Appeal from the denial of qualified immunity by the United States District Court for the District of Connecticut (Droney, J.).  Plaintiff Denise Taravella alleges that her right to due process was violated when she was fired from municipal employment without a hearing.  Because the mayor's conduct was objectively reasonable, we reverse.

     Judge Straub dissents with a separate opinion.

DAVID S. MONASTERSKY, ESQ., (Martha A. Shaw, Esq., on the brief), Howd & Ludorf, LLC, Hartford, CT, for Defendants-Appellants.

BARBARA E. GARDNER, ESQ., Manchester, CT, for Plaintiff-Appellee.

DENNIS JACOBS, Chief Judge:

Defendant Thomas Dunn, mayor of the Town of Wolcott, appeals from the denial of his motion for qualified immunity by the United States District Court for the District of Connecticut (Droney, J.). When Dunn became mayor, he terminated the employment of plaintiff Denise Taravella, who had been the director of the town's senior center. Taravella sued Dunn, Town Municipal Agent Douglas Coley, and the Town itself, alleging a variety of federal constitutional and state law violations. The defendants moved for summary judgment on all claims, and the district court initially [1] granted the motion as to speech, association, and defamation claims pleaded under 42 U.S.C. § 1983; [2] denied the motion as to the § 1983 procedural due process claim; and [3] reserved decision on the state claims. On reconsideration, the district court granted Coley's motion for summary judgment on ground of qualified

2

immunity but denied Dunn's motion, ruling that questions of fact regarding Taravella's employment contract precluded a ruling on qualified immunity with regard to Taravella's procedural due process claim. On appeal, Dunn argues that he is entitled to qualified immunity because his conduct was objectively reasonable in light of the facts before him. We agree, and therefore reverse.

## BACKGROUND

Denise Taravella was hired by then-Mayor Michael DeNegris as Senior Center Director of the Town of Wolcott Senior Center in August, 2002. In a meeting with DeNegris and Kimberly Hunt, the Town's personnel director, Taravella signed a Letter of Benefits Agreement ("the Agreement") that established the terms of her employment for a one-year period. (Taravella signed a substantially identical agreement in October 2003.) The Agreement specified terms relating to compensation, work hours, vacation and holidays, sick and personal leave, and pension plan participation. The Agreement also stated that Taravella's health benefits and funeral leave would match the benefits enjoyed by the town's unionized employees. As to termination, the

Agreement provided that Taravella could terminate her employment for any reason on ten days' notice, and that the Town could terminate Taravella's employment for disciplinary reasons on ten days' notice.

Taravella alleges that she was also told during the August 2002 meeting that she "would have everything that the [Town's] union employees had," including--she argues--the right not to be terminated without cause and the right to a pre-termination hearing. But Taravella concedes that she never received such a promise in writing, and it is undisputed that Dunn was never made aware of this alleged promise.

Dunn defeated DeNegris in the Town's November 2003 mayoral election. On assuming the mayoralty, Dunn began to receive complaints regarding Taravella's conduct as director of the Senior Center. In March 2004--after consulting with Town Attorney Bryan Tynan--Dunn and Coley met with Taravella to terminate her employment. During the meeting, which lasted roughly ten minutes, Dunn read a letter explaining that Taravella's employment was to be terminated in ten days' time because of complaints from town seniors. The parties dispute whether Taravella asked for a hearing, or

4

whether Dunn told Taravella to request a hearing if she wanted one. But it is undisputed that Dunn sent Taravella a letter the next day stating that she was not entitled to a pre-termination hearing because she was not a union employee. Taravella made no subsequent request for a hearing.

Taravella filed suit in June 2004, alleging fifteen causes of action, including violations of her Fourteenth Amendment procedural due process rights and her First Amendment rights to free speech and association. She also alleged defamation in violation of her Fourteenth Amendment liberty interests, as well as various state statutory and common law violations.

The defendants moved for summary judgment on all counts. The district court granted the motion as to Taravella's First Amendment speech and association claims and her Fourteenth Amendment defamation claim, and reserved decision as to Taravella's state claims. Taravella v. Town of Wolcott, No. 3:04cv895, 2008 WL 747668 (D.Conn. March 18, 2008) (Ruling on Motion for Summary Judgment). But the district court denied the motion as to Taravella's procedural due process claim, ruling that "ambiguous terms

5

in the Agreement created a material question of fact as to whether Taravella could only be terminated for just cause," which would entitle her to a pre-termination hearing.  Id. at *5.

The defendants moved for reconsideration on the ground that the district court had not addressed their claim to qualified immunity.  The district court granted reconsideration and, on reconsideration, granted Coley's summary judgment motion on the basis of qualified immunity. Taravella v. Wolcott, No. 3:04cv895, 2008 WL 1821507 (D.Conn. April 22, 2008) (Ruling on Motion for Reconsideration).  The district court determined that Coley was entitled to qualified immunity because his conduct had been objectively reasonable.  Id. at *4.  But the court concluded that "material questions of fact concerning defendant Dunn's conduct require resolution by a jury, and preclude granting him summary judgment on the basis of qualified immunity."  Id. at *3.  Specifically, the court ruled that because the parties disputed Taravella's entitlement to a pre-termination hearing, a question of fact existed which had to be resolved by a jury before the reasonableness of Dunn's conduct could be determined.  Id.

6

In addition, the court ruled that Dunn's reliance on the advice of the Town Attorney did not entitle him to qualified immunity. Id. The court therefore denied Dunn's motion for summary judgment.

This appeal followed.[1]

## DISCUSSION

We review the district court's summary judgment decision de novo. Roe v. City of Waterbury, 542 F.3d 31, 35 (2d Cir. 2008). Summary judgment is appropriate if "there is no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

## I

"Qualified immunity protects officials from liability for civil damages as long as 'their conduct does not violate clearly established statutory or constitutional rights of

---

[1] It is well established that a denial of an official's motion for summary judgment on grounds of qualified immunity, to the extent it turns on an issue of law, constitutes an immediately appealable decision. See Mitchell v. Forsyth, 472 U.S. 511, 530 (1985); X-Men Sec., Inc. v. Pataki, 196 F.3d 56, 65 (2d Cir. 1999).

7

which a reasonable person would have known.'" Gilles v. Repicky, 511 F.3d 239, 243 (2d Cir. 2007) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). When a defendant invokes qualified immunity to support a motion for summary judgment, courts engage in a two-part inquiry: whether the facts shown "make out a violation of a constitutional right," and "whether the right at issue was clearly established at the time of defendant's alleged misconduct." Pearson v. Callahan, 129 S.Ct. 808, 815-16 (2009).[2]

To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). An official is therefore entitled to immunity if his action was "objectively legally reasonable in light of the legal rules that were clearly established at the time it was taken." X-Men Sec., Inc. v. Pataki, 196 F.3d 56, 66 (2d Cir. 1999) (citing Anderson, 483 U.S. at 639) (quotation marks and alterations omitted).

---

[2] Pearson overruled the Court's prior holding, in Saucier v. Katz, 533 U.S. 194 (2001), that courts had to proceed through the two-step inquiry in a particular order. 129 S. Ct. at 818. The Court recognized, however, that the traditional sequence "is often appropriate." Id.

**II**

In considering an official's qualified immunity claim, a court "must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right." Pearson, 129 S.Ct. at 815-16. Here, Taravella alleges a violation of her Fourteenth Amendment procedural due process rights. "To determine whether a plaintiff was deprived of property without due process of law in violation of the Fourteenth Amendment, we must . . . identify the property interest involved." O'Connor v. Pierson, 426 F.3d 187, 196 (2d Cir. 2005). This involves a two-step process. "First, we must determine whether some source of law other than the Constitution, such as a state or federal statute, confers a property right on the plaintiff." Id. "Once such a property right is found, we must determine whether that property right 'constitutes a property interest for purposes of the Fourteenth Amendment.'" Id. (citing Town of Castle Rock v. Gonzales, 545 U.S. 748, 756 (2005)).

"In the employment context, a property interest arises only where the state is barred, whether by statute or contract, from terminating (or not renewing) the employment

9

relationship without cause." S & D Maintenance Co. v. Goldin, 844 F.2d 962, 967 (2d Cir. 1988). Under Connecticut law, employment is at-will by default, and parties must specifically contract a right to be terminated only for cause. See Torosyan v. Boehringer Ingelheim Pharms., Inc., 234 Conn. 1, 14-15 (1995). An exception exists for contracts that create employment for a fixed period. See Slifkin v. Condec Corp., 538 A.2d 231, 236 (Conn. App. 1988). Whether Taravella could be fired without cause is unclear. The Agreement between Taravella and the town contained ambiguous clauses regarding both term and termination. With regard to term, the Agreement provided that Taravella would be employed for one year (subject to renewal), but (as the district court explained) it also contemplated "the possibility of termination due to a mayoral administration change, which implies that the parties may not have intended to guarantee Taravella a full one year term of employment." Taravella v. Town of Wolcott, No. 3:04cv895, 2008 WL 747668 at *6 (D.Conn. March 18, 2008) (Ruling on Motion for Summary Judgment). And with regard to termination, the Agreement contained language suggesting that while the town could only fire Taravella for cause, she

10

could quit for any reason.  Id.

As the district court observed, these ambiguities create a question of fact regarding whether Taravella could be fired without cause.  But because, on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), we must credit Taravella's allegation that she could not be fired without cause for purposes of the qualified immunity analysis.  It follows that Taravella has sufficiently alleged the invasion of a property interest.

It is also clear that the alleged property interest is constitutionally protected.  "[T]he state-law property interest of government employees who may only be discharged for cause . . . is a constitutionally protected property interest for purposes of the Fourteenth Amendment," O'Connor v. Pierson, 426 F.3d 187, 196 (2d Cir. 2005) (citing Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532 (1985); Strong v. Bd. of Educ., 902 F.2d 208, 211 (2d Cir. 1990)).  As such, "[t]he tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity

11

to present his side of the story."  Loudermill, 470 U.S. 532, 546 (1985).  And because this principle has been clearly established since Loudermill, the second prong of the qualified immunity analysis would appear to be satisfied.

**III**

"[E]ven where the law is 'clearly established' and the scope of an official's permissible conduct is 'clearly defined,' the qualified immunity defense also protects an official if it was 'objectively reasonable' for him at the time of the challenged action to believe his acts were lawful."  Higazy v. Templeton, 505 F.3d 161, 169-70 (2d Cir. 2007).  "[T]he matter of whether a defendant official's conduct was objectively reasonable, i.e., whether a reasonable official would reasonably believe his conduct did not violate a clearly established right, is a mixed question of law and fact."  Kerman v. City of New York, 374 F.3d 93, 109 (2d Cir. 2004).  "Although a conclusion that the defendant official's conduct was objectively reasonable as a matter of law may be appropriate where there is no dispute as to the material historical facts, if there is such a

12

dispute, the factual question must be resolved by the factfinder." Id. (citations omitted).

We conclude that Dunn's conduct was objectively reasonable as a matter of law. Taravella's procedural due process right is alleged to arise from two sources: the Agreement she signed during her August 2002 meeting with DeNegris (and renewed the following year), and the (disputed) contemporaneous oral promise regarding union-like benefits. As to the latter, Taravella has conceded that Dunn neither knew nor had reason to know about the alleged oral promise. As to the former, the district court has concluded--and we agree--that the Agreement is ambiguous as a matter of law. Dunn read the Agreement, sought legal advice, and reasonably concluded that Taravella could be terminated without a hearing.[3] Because a reasonable mayor could understand the Agreement to provide that Taravella could be fired without a hearing, it cannot be said that Dunn acted unreasonably in doing so.

---

[3] We need not decide whether reliance on legal advice constitutes an "extraordinary circumstance" sufficient by itself to give rise to qualified immunity, see Sampson v. City of Schenectady, 160 F.Supp.2d 336, 350 (N.D.N.Y. 2001), because at the very least the solicitation of legal advice informs the reasonableness inquiry.

At oral argument, Taravella's counsel argued that because there is an ambiguity in the Agreement regarding the entitlement to a hearing, a cautious person--and therefore a reasonable person--would afford a hearing.  This is not the law; and if it were, the jury trial Taravella seeks would be unnecessary, since the very fact that Dunn acted adverse to Taravella in the face of the ambiguity would, under Taravella's theory, demonstrate constitutionally unreasonable conduct.

Judge Straub's dissent is in two parts.  The first part questions why this Circuit analyzes qualified immunity by considering three questions rather than just two. Specifically, Judge Straub would only consider: (1) whether the facts plaintiff alleges establish a violation of a constitutional right and (2) whether this constitutional right was clearly established.  Such a formulation would omit consideration of whether it was "objectively reasonable" for a defendant to believe his actions were lawful.  The second part of Judge Straub's opinion, which concerns the particulars of this case, illustrates why this third question is indispensable.

Judge Straub recognizes the employment contract is ambiguous as to whether Ms. Taravella had the right to a

14

hearing before dismissal. And, he would remand for a finding (on extrinsic evidence) as to the intent of Mayor Dunn's predecessor, in aid of answering the first inquiry, i.e., whether under the facts she alleged Taravella had a constitutional right to a hearing. However, the ambiguity of a contract is ascertainable as a matter of law, and we all conclude that this contract is ambiguous. Given the contract's ambiguity and the standard--that we look at "whether a reasonable official would reasonably believe his conduct did not violate a clearly established right," Kerman v. City of New York, 374 F.3d 93, 109 (2d Cir. 2004)--it cannot be said that the defendant acted unreasonably when he interpreted the ambiguous contract one way instead of another.

## CONCLUSION

Although Taravella has alleged a violation of a constitutional right, and although that constitutional right was clearly established at the time of the alleged violation, Dunn's conduct was objectively reasonable in light of the information he had. We therefore reverse the district court's denial of Dunn's summary judgment motion on grounds of qualified immunity.

15

STRAUB, *Circuit Judge*, dissenting.

I respectfully dissent. This is a straightforward qualified immunity case. In line with well-established Supreme Court and Circuit precedent, Mayor Thomas G. Dunn's appeal from the District Court's order denying summary judgment based on qualified immunity should be dismissed because the District Court found that material factual disputes preclude summary judgment.

I write to make two main points. First, I wish to call the Court's attention to what appears to me to be a long-standing inconsistency in our case law. For years, our cases have described the qualified immunity analysis both as a two-step process *and* as a three-step process. The latter has no basis in Supreme Court precedent and has served to confuse the case law in this area.

Second, on the merits, I would hold that (under any standard) Dunn's appeal should be dismissed for lack of jurisdiction because the District Court found that material factual disputes exist and the record reflects that these factual disputes are indeed material.

I.      The Standard for Qualified Immunity

The majority's opinion cites precedential cases from our Circuit to explain the qualified immunity analysis. However, it does not address an inconsistency in our case law that dates back at least a decade. Ten years ago, in a decision that has been cited dozens of times by the lower courts in our Circuit, we described the qualified immunity analysis as a three-step process:

> [A] government official sued in his individual capacity . . . is entitled to qualified immunity in any of *three* circumstances: (1) if the conduct attributed to him is not prohibited by federal law . . . ; or (2) where that conduct is so prohibited, if the plaintiff's right not to be subjected to such conduct by the defendant was not clearly established at the time of the conduct . . . ; or (3) if the defendant's action was objectively legally reasonable . . . in light of the legal rules that were clearly established at the time it was taken. . . . These three issues should be approached

-1-

in sequence.

*X-Men Sec., Inc. v. Pataki*, 196 F.3d 56, 65-66 (2d Cir. 1999) (emphasis added; citations, internal quotation marks, and alterations omitted). We reiterated this tripartite scheme in 2003. *See Harhay v. Town of Ellington Bd.of Educ.*, 323 F.3d 206, 211-12 (2d Cir. 2003) ("Our analysis of a qualified immunity claim consists of a three step inquiry." (citing, *inter alia*, *X-Men*)). *X-Men* and *Harhay* have been regularly cited, both by our court and by others in our Circuit, for the proposition that qualified immunity in our Circuit involves a three-step analysis. *See, e.g.*, *Almonte v. City of Long Beach*, 478 F.3d 100, 108-09 (2d Cir. 2007) (citing *Harhay*); *Fresh Start Substance Servs. v. Galvin*, 599 F. Supp. 2d 279, 286 (D. Conn. 2009) ("Analysis of a qualified immunity claim involves a three-step inquiry." (citing *Harhay*)); *Lyman v. City of Albany*, 597 F. Supp. 2d 301, 306 (N.D.N.Y. 2009) (citing *Harhay*); *Lipton v. County of Orange, N.Y.*, 315 F. Supp. 2d 434, 460 (S.D.N.Y. 2004) (citing *X-Men*).

In other cases, however, we describe the qualified immunity inquiry as involving only *two* steps, *see, e.g.*, *Higazy v. Templeton*, 505 F.3d 161, 169 n.8 (2d Cir. 2007); *Jones v. Parmley*, 465 F.3d 46, 55 (2d Cir. 2006), a formulation that other lower courts in our Circuit have also noted, *see, e.g.*, *Petrucelli v. Hasty*, 605 F. Supp. 2d 410, 426 (E.D.N.Y. 2009); *Warren v. Goord*, 579 F. Supp. 2d 488, 497 n.6 (S.D.N.Y. 2008) (citing *Higazy*), *aff'd on other grounds*, No. 08-5541-pr, 2010 WL 710882 (2d Cir. Mar. 2, 2010); *Belanger v. City of Hartford*, 578 F. Supp. 2d 360, 365 (D. Conn. 2008) (citing *Jones*).

This discrepancy may stem from the fact that *X-Men* pre-dates *Saucier v. Katz*, 533 U.S.

194 (2001).[1] In *Saucier*, the Supreme Court distilled its prior case law into a mandatory, two-step approach to qualified immunity:

> Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry. . . . If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries . . . . On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established.

*Id.* at 201.

*Saucier* thus frames the issue as a *two*-step analysis. Though the sequential aspect of this two-step analysis has now been made permissive, such that courts may consider step two before step one, *see Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009), nothing in *Pearson* has altered the substance of the two basic analytical elements. The two questions remain (1) whether the plaintiff has shown a constitutional violation and (2) whether the right allegedly violated was clearly established.

The majority describes qualified immunity as "a two-part inquiry," and finds (1) that Taravella has sufficiently alleged the invasion of a constitutionally protected property interest and (2) that this constitutionally protected property interest has been clearly established since 1985. *See Ante* at **[pages 8, 11-12]**. Nevertheless, the majority then proceeds to the additional step of analyzing whether Dunn's actions were "objectively reasonable" and finds that Dunn is entitled to qualified immunity on this basis. *Ante* at **[page 12]**. The majority's formulation of the

---

[1] Of course, this may not be so. In *Sacco v. Pataki*, 114 F. Supp. 2d 264 (S.D.N.Y. 2000), the District court described "a two part test for qualified immunity," *id.* at 274, citing *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), which long predates *Saucier*. We relied on *Harlow* (among other cases) in formulating our *three* step approach. *See X-Men*, 196 F.3d at 66.

standard thus not only fails to clarify the appropriate standard but serves to perpetuate the confusion, simultaneously describing a two-step analysis and relying on an extraneous third step.

As Justice Sotomayor explained when she was a member of our Court,

> [c]ontrary to what our case law might suggest, the Supreme Court does not follow this 'clearly established' inquiry with a second, *ad hoc* inquiry into the reasonableness of the officer's conduct. Once we determine whether the right at issue was clearly established for the particular context that the officer faced, the qualified immunity inquiry is complete.

*Walczyk v. Rio*, 496 F.3d 139, 166-67 (2d Cir. 2007) (Sotomayor, J., concurring).

*Saucier* explained that "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. However, this does not mean that there is a third step to the analysis. Rather, as Justice Sotomayor noted:

> whether a right is clearly established is *the same question* as whether a reasonable officer would have known that the conduct in question was unlawful. This Court's case law, in contrast, bifurcates the 'clearly established' inquiry into two steps. . . . By splitting the 'relevant, dispositive inquiry' in two, we erect an additional hurdle to civil rights claims against public officials that has no basis in Supreme Court precedent.

*Walczyk*, 496 F.3d at 166 (Sotomayor, J., concurring).

The *Walczyk* majority, however, thought these concerns were "unwarranted," reasoning that if a right were clearly established, it would not be reasonable to violate that right; conversely, if it were reasonable for the officer to act as he did, the right could not be clearly established. *See id.* at 154 n.16. But this formulation does not resolve the inconsistency.

First, the fact remains that post-*Walczyk* cases have not recognized this problem and have

continued to apply the three-step analysis.[2]  Second, if there is no substantive difference between the two- and three-step analysis, then there is no reason why we should not modify our Circuit case law to comport with binding Supreme Court precedent.

Third, and most important, by formulating the inquiry as both a two- and three-step analysis, we run the risk that lower courts will interpret the third step—the "objective reasonableness" inquiry—as a hurdle that is somehow distinct from, and in addition to, the "reasonableness" inquiry that is already a part of the second step.  Our cases do not say, "If a

---

[2]The case law is divided, not only in our Circuit, but also in courts around the country. Several circuits have used a three-step analysis, even after the Supreme Court mandated a two-step inquiry in *Saucier*.  *See, e.g.*, *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 901 (6th Cir. 2004); *Skoog v. County of Clackamas*, 469 F.3d 1221, 1229 (9th Cir. 2006); *Shero v. City of Grove*, 510 F.3d 1196, 1204 (10th Cir. 2007).

At least one of our sister Circuits has rejected its prior three-step formulation.  *See Maldonado v. Fontanes*, 568 F.3d 263, 269 (1st Cir. 2009) ("[W]e owe fidelity to the [Supreme] Court's articulation of the [qualified immunity] test . . . [a]nd so we adopt the Court's two-part test and abandon our previous usage of a three-step analysis."); *see also id.* (explaining that, because *Pearson* was an intervening Supreme Court decision, an *en banc* was not necessary to overrule circuit precedent).  The Sixth Circuit seems to have conflicting case law on this point, having written in May of 2009 that "the third step is redundant" (at least in excessive force cases), *Grawey v. Drury*, 567 F.3d 302, 309 (6th Cir. 2009), but writing a month later that qualified immunity is tested by a three-step analysis, *see Merriweather v. Zamora*, 569 F.3d 307, 315 (6th Cir. 2009).  It has also noted several years ago that "both the two-step approach and the three-step approach can be said to capture the holding of" *Saucier*.  *Estate of Carter v. City of Detroit*, 408 F.3d 305, 311 n.2 (6th Cir. 2005).  The Ninth Circuit has noted the divergence in its case law but seems not to have definitively resolved the issue.  *See CarePartners LLC v. Lashway*, 545 F.3d 867, 876 n.6 (9th Cir. 2008).  The Third Circuit recently described the "multi-step inquiry" for qualified immunity, *Walter v. Pike County*, 544 F.3d 182, 191 (3d Cir. 2008), but did not delve deeper into the question because the plaintiffs failed to establish a constitutional violation, the threshold question in either case, *see id.* at 196.  Subsequently, the Third Circuit applied the two-step test.  *Bayer v. Monroe County Children and Youth Servs.*, 577 F.3d 186, 191-92 (3d Cir. 2009).

These cases demonstrate that, after *Saucier* and even after *Pearson*, courts have been inconsistent in their treatment of the proper standard for qualified immunity.

right is clearly established, then the officer acted unreasonably." Rather, we have held, "Qualified immunity is warranted if *either* (1) the official's actions did not violate clearly established law, or (2) *even if* the actions violated a clearly established law, the official was objectively reasonable in believing in the lawfulness of his actions." *Conn. ex rel. Blumenthal v. Grotty*, 346 F.3d 84, 101-02 (2d Cir. 2003) (emphasis added); *see also Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006) (describing either/or standard). This is the formulation that the majority uses. *See ante* at **[page 12]** ("Even where the law is clearly established and the scope of an official's permissible conduct is clearly defined, the qualified immunity defense also protects an official if it was objectively reasonable for him at the time of the challenged action to believe his acts were lawful." (quoting *Higazy*, 505 F.3d at 169-70) (internal quotation marks and alteration omitted)).

Our district courts have taken these steps to be distinct as well. *See, e.g.*, *Fleming v. Sharma*, 605 F. Supp. 2d 399, 408 (N.D.N.Y. 2009) ("However, even if the constitutional right was clearly established, a defendant may nonetheless be entitled to qualified immunity so long as it was objectively reasonable for him to believe that his actions did not violate the plaintiff's constitutional rights."); *V.S. ex rel. T.S. v. Muhammad*, 581 F. Supp. 2d 365, 385 (E.D.N.Y. 2008) ("Finally, even if the right were clearly established, a defendant could still be protected by qualified immunity if it was objectively reasonable for him to believe that his conduct did not violate the law."), *rev'd on other grounds*, No. 08-5157-cv, __ F.3d __, 2010 WL 536719 (2d Cir. Feb. 17, 2010) (rejecting, among other things, the district court's determination that further discovery was warranted before a determination could be made as to qualified immunity); *Peters v. Peters*, 547 F. Supp. 2d 165, 170 (D. Conn. 2008) ("Qualified immunity is warranted [if an

official's conduct violated a constitutional right and] if either (1) the official's actions did not violate clearly established law, or (2) even if the actions violated a clearly established law, the official was objectively reasonable in believing in the lawfulness of his actions." (internal quotation marks omitted)); *Muhammad v. Gold*, No. 05-cv-146, 2007 WL 3088133, at *4 (D. Vt. Oct. 23, 2007) ("If either the right was not clearly established or a reasonable official would not have believed his conduct would violate that right, the official is shielded from liability for civil damages.").

Although a court might reach the same result if it correctly analyzed "reasonableness" only at step two, instead of incorrectly analyzing that issue *both* at step two and three, there is no sound legal basis for perpetuating this three-step inquiry and "giv[ing] defendants a second bite at the immunity apple." *Walczyk*, 496 F.3d 139 at 169 (Sotomayor, J., concurring).

Our recent cases have not helped to clarify this subtle, but important, inconsistency in our case law.[3] *Saucier* and *Pearson* explain that the objective reasonableness inquiry is part of the "clearly established" analysis.[4] However, because *X-Men* and *Harhay* hold otherwise (and have

---

[3] Or, as Justice Sotomayor has put it, "the distinction . . . is a fine one, but . . . it has real consequences." *Walczyk*, 496 F.3d at 168 (Sotomayor, J., concurring).

[4] Our Circuit has cited *Pearson* seventeen times thus far. Ten of these cases were summary orders: *Distiso v. Town of Wolcott*, No. 08-1865-cv, 2009 WL 3652096 (2d Cir. Nov. 5, 2009); *Keene v. Schneider*, No. 09-0872-cv, 2009 WL 3463892 (2d Cir. Oct. 29, 2009); *Serby v. Town of Hempstead*, No. 08-0186-cv, 2009 WL 3416179 (2d Cir. Oct. 22, 2009); *McCarroll v. Nardozzi*, 323 F. App'x 7 (2d Cir. 2009); *Plummer v. Quinn*, 326 F. App'x 571 (2d Cir. 2009); *Kennedy v. Lehman*, 328 F. App'x 16 (2d Cir. 2009); *Fierro v. City of N.Y.*, 341 F. App'x 696 (2d Cir. 2009); *Moore v. County of Delaware*, No. 08-2426-cv, 2009 WL 2222938 (2d Cir. July 27, 2009); *Rolon v. Ward*, 345 F. App'x 608 (2d Cir. 2009); and *Dumpson v. McGinnis*, No. 00-0309-pr, 2009 WL 3259419 (2d Cir. Oct. 13, 2009). These cases mention *Pearson* only tangentially. However, most of these cases do so in the context of discussing a "two-step" inquiry with regard to qualified immunity. *See Rolon*, 345 F. App'x at 609-10; *Moore*, 2009 WL 2222938, at *3; *Fierro*, 341 F. App'x at 698 (addressing objective reasonableness of defendant's

not been revisited), lower courts in our Circuit continue to differ in how they state the law. Although I believe this legal issue should be clarified as a general matter, it has particular importance here because the District Court employed a three-step analysis below. *See Taravella v. Town of Wolcott*, No. 04-cv-895, 2008 WL 1821507, at *1-2 (D. Conn. Apr. 22, 2008).

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson*, 129 S. Ct. at 815 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Therefore, in accordance with *Saucier* and *Pearson*, the analysis should be as follows:

> (1) Taken in the light most favorable to the party asserting the injury, do the facts alleged or shown (depending on the stage of litigation) show that the state official's conduct violated a constitutional right?
>
> (2) If a constitutional violation can be made out on a favorable view of the parties' submissions, was the right clearly established?

*Cf. Saucier*, 533 U.S. at 201-02; *Pearson*, 129 S. Ct. at 815-16. Of course, in accordance with *Pearson*, the two elements need not be addressed sequentially. The standard for determining

---

actions under the second *Pearson* prong); *Plummer*, 326 F. App'x at 573; *McCarroll*, 323 F. App'x at 9; *Distiso*, 2009 WL 3652096 at *2. *Pearson* was also cited in *Redd v. Wright*, No. 06-4315-pr, __ F.3d __, 2010 WL 774304, at *2-4 (2d Cir. Mar. 9, 2010); *Bolmer v. Oliveira*, 594 F.3d 134, 141-42 (2d Cir. 2010); *Turkmen v. Ashcroft*, 589 F.3d 542, 550 (2d Cir. 2009) (per curiam); *Dean v. Blumenthal*, 577 F.3d 60, 66-68 (2d Cir. 2009) (per curiam); *Finigan v. Marshall*, 574 F.3d 57, 61 (2d Cir. 2009); and *Kelsey v. County of Schoharie*, 567 F.3d 54, 60-61 (2d Cir. 2009). *Redd, Bolmer, Turkmen, Dean*, *Finigan*, and *Kelsey* noted the two-step analysis, but did not speak to prior precedent ostensibly establishing a three-step test.

In *Okin v. Village of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 433 n. 11 (2d Cir. 2009), we clarified that, according to *Saucier* and *Pearson*, the "'objectively reasonable' inquiry is part of the 'clearly established' inquiry." However, because the majority here frames the "objectively reasonable" inquiry as an analysis separate from the "clearly established" inquiry, our case law remains muddled.

when a right is "clearly established" would not change. "In deciding whether a right was clearly established, we ask: (1) Was the law defined with reasonable clarity? (2) Had the Supreme Court or the Second Circuit affirmed the rule? and (3) Would a reasonable defendant have understood from the existing law that the conduct was unlawful?"[5] *Young*, 160 F.3d at 903. This framework would supplant any language to the contrary, including but not limited to the three-step analysis framed in *X-Men* and *Harhay*.

## II. The Substantive Qualified Immunity Analysis

Under either a two- or a three-step inquiry, I would dismiss Dunn's appeal of the denial of summary judgment on the basis of qualified immunity because the District Court concluded that material factual disputes preclude summary judgment, and a review of the record supports that these factual disputes are indeed material.

As to the first step in the qualified immunity analysis, the District Court found that there

---

[5]The purpose behind the "clearly established" prong of the qualified immunity analysis is to put defendants on notice that their conduct is unlawful. "This is not to say that an official action is protected by qualified immunity unless the *very action* in question has previously been held unlawful . . .; but it is to say that *in light of the pre-existing law the unlawfulness must be apparent*." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (emphasis added); *see also Young v. County of Fulton*, 160 F.3d 899, 903 (2d Cir. 1998).

Indeed, "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful." *United States v. Lanier*, 520 U.S. 259, 269 (1997). *Lanier* was interpreting 18 U.S.C. § 242, the criminal analogue of 42 U.S.C. § 1983. A § 242 defendant is entitled to "fair warning" that his conduct deprived the victim of a constitutional right. *See Hope v. Pelter*, 536 U.S. 730, 740-41 (2002). In *Hope*, the Supreme Court explained that "fair warning" in the criminal context "was the same as the standard for determining whether a constitutional right was 'clearly established' in civil litigation under § 1983." *Id.* at 740 (citation omitted). After quoting the § 242 language from *Lanier*, the Supreme Court concluded in *Hope* "that officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Id.* at 741.

-9-

is a genuine issue of material fact regarding whether Taravella had a constitutional right to a pre-termination hearing. Likewise, as to the second step, the District Court found that there are disputed issues of material fact relating to whether that right is clearly established. Upon analyzing the terms of Taravella's contract and the circumstances surrounding her hiring and firing, the District Court determined that a reasonable factfinder could conclude that it was a violation of Taravella's rights to terminate her without a hearing and that it was unreasonable for Dunn to violate those rights. This, according to the District Court, precludes summary judgment.

It is black letter law in our Circuit that "'immediate appeal is not permitted if the district court's denial of summary judgment for qualified immunity rests on a finding that there were material facts in dispute.'" *Martinez v. Simonetti*, 202 F.3d 625, 632 (2d Cir. 2000) (quoting *Genas v. New York Dep't of Corr. Servs.*, 75 F.3d 825, 830 (2d Cir. 1996)). "[W]hen a district judge finds that a factual dispute exists, which is sufficiently material to take a case to the jury, *an appellate court should not review even the legal issue of whether this finding of a factual dispute was correct.*" *Genas*, 75 F.3d at 830 (emphasis added) (noting, in the context of an appeal of a district court's denial of summary judgment as to qualified immunity, that "we do not have jurisdiction to review the district court's determination that fact issues remain as to an element of plaintiff's . . . claim."). This is because "the issue of whether there is sufficient evidence to support plaintiff's version of the material facts is within the province of the district court." *Holeman v. City of New London*, 425 F.3d 184, 192 (2d Cir. 2005). An appeal in this context is available only where the defendant proceeds "on stipulated facts, or on the facts that the plaintiff alleges are true, or on the facts favorable to the plaintiff that the trial judge concluded the jury might find." *Salim v. Proulx*, 93 F.3d 86, 91 (2d Cir. 1996).

The majority chooses not to follow these well-settled rules by doubting conclusions that are uniquely the province of the District Court. Having proceeded to decide an issue that it should not, the majority then, in the face of ambiguity, credits the *defendant's* version of the facts with respect to whether Dunn acted reasonably. This reverses well-established case law. First, it draws the inference in favor of the *moving* party at summary judgment. Second, as a result, it decouples the general summary judgment standard from qualified immunity, even though we have always indicated that the general standard applies in qualified immunity cases. Third, it ignores the rule that interlocutory appeals of the denial of qualified immunity are inappropriate when the parties disagree about whether the factual disputes found by the District Court are genuine. Fourth, although the majority purports to analyze the reasonableness of Dunn's actions based on undisputed facts, it is apparent from the record that the facts upon which the majority rests its analysis are *not* undisputed.

To illustrate fully how the majority fails to rely either on undisputed facts or on the facts most favorable to Taravella when analyzing whether Dunn's actions were reasonable, I begin at step one of the analysis, whether Taravella established a constitutional right to pre-termination process. As is clear from the analysis below, the majority credits Taravella's version of the facts at step one but then fails to do so when subsequently analyzing the reasonableness of Dunn's actions.

As to the first step of the qualified immunity analysis, the starting point is of course Taravella's contract. Under Connecticut law, an employment agreement that provides a fixed term of employment (as opposed to an indefinite term of employment), may only be terminated for cause; such a contract eliminates the default rule of at-will termination. *See Slifkin v. Codec*

*Corp.*, 13 Conn. App. 538, 549 (1988).[6] Accordingly, if Taravella's contract provided for a fixed term of employment, then she could have been terminated only for cause and, therefore, would have been entitled to certain procedural protections. *See O'Connor v. Pierson*, 426 F.3d 187, 196 (2d Cir. 2005) ("[I]t is well established that the state-law property interest of government employees who may only be discharged for cause . . . is a constitutionally protected property interest for purposes of the Fourteenth Amendment."). Both the majority and the District Court conclude that Taravella's contract is ambiguous as to whether she had a fixed term of employment.

The District Court's finding of ambiguity rested on the following. First, the terms of Taravella's contracts provided for fixed, one-year periods of employment. *See* September 4, 2008 Joint Appendix ("J.A.") 187-88 (2002-03 Agreement), 189-90 (2003-04 Agreement). Near the outset, the agreement states, "Employer hereby employs, engages and hires Employee as the

---

[6] A violation of a *constitutional* right typically cannot turn on a transgression of *state* law. *See*, *e.g.*, *Rosenberg v. Martin*, 478 F.2d 520, 524-25 (2d Cir. 1973) (Friendly, J.) ("The *constitutional* right to privacy is not to be equated with the statutory right accorded by" New York law.). However, the analysis is slightly different in the due process context. Procedural due process protections only apply when a person is "deprive[d] . . .of life, liberty, or property." U.S. CONST., amend. XIV. Therefore, the dispositive question is whether Taravella has a protected liberty or property interest.

"Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source *such as state law* — rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *O'Connor v. Pierson*, 426 F.3d 187, 196 (2d Cir. 2005) (emphasis added).

Thus, although we typically would not look to state law to determine if a civil rights plaintiff has suffered a deprivation of her constitutional rights, we look to state law to determine whether such a plaintiff has a protected property interest when she makes a procedural due process claim, as in this case.

-12-

Senior Center Director for the Town of Wolcott." J.A. 187. The document continues, "The term of the agreement shall be one year from date of signature." *Id.* The agreement, however, contains other provisions regarding termination, which are at odds with the one-year terms. For example, the agreement contemplates "termination . . . due to administration changes." *Id.* It also provides that Taravella may terminate her employment with ten days' notice, and that "[t]ermination due to disciplinary reasons shall require ten (10) days['] written notification by the Employer." According to both the District Court and the majority, these terms, which suggest an at-will employment relationship, create ambiguity as to whether Taravella had a fixed term of employment.

Under Connecticut law, where contract language creates ambiguity, extrinsic evidence as to the parties' intent may properly be considered, and the determination of the parties' intent is a question of fact. *See, e.g.*, *Barton v. City of Bristol*, 291 Conn. 84, 93 (2009). Thus, Taravella argues that, in addition to the explicit terms of the Agreement, the circumstances surrounding her hiring and termination generally gave her the right to a pre-termination hearing.[7] Specifically, Taravella claims that she was told at the time of her employment that she was to have *all* of the union benefits, including the right to a pre-termination hearing.[8] There is no dispute that union employees may only be terminated for cause. Accordingly, if Taravella's claim is correct, then she would have a protected property interest in her job, *cf. O'Connor*, 426 F.3d at 196, and it

_____

[7] Taravella's employment contracts do not contain a merger clause or any similar language suggesting that it constitutes the entire agreement between the parties, and Defendants' motion for summary judgment raised no parol evidence-type defenses.

[8] This is at least consistent with the provision of the agreements that provide that Taravella would get the same funeral leave, medical benefits, life insurance benefits, and post-retirement health benefits as unionized Town employees.

would be a violation of her rights to terminate her without a hearing. The District Court concluded, and the majority agrees, that the factual dispute about the terms of Taravella's contract precludes the entry of summary judgment in defendants' favor as to the first step of the qualified immunity analysis.

Although the majority views the evidence in a light most favorable to plaintiff at step one of its analysis, it fails to proceed on undisputed facts or view the facts in a light most favorable to Taravella when analyzing whether Dunn acted reasonably.

The second step of the qualified immunity analysis – the "clearly established" prong – requires us to determine whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). Thus, relevant to this second step is what Dunn knew or should have known regarding Taravella's contractual rights. The majority states, without citation to the record, "that Dunn was never made aware of" the promise by his predecessor that Taravella was entitled to union benefits, including a pre-termination hearing.[9] *See, e.g.*, *ante* at **[pages 4, 13]**. The majority then goes on to state that Dunn (along with certain other Town officials) met with Taravella to terminate her, and that "Dunn sent Taravella a letter the next day stating that she was not entitled to a pre-termination hearing." *Ante* at **[page 5]**. This recitation of the record, however, is inaccurate in some respects and is not based on undisputed facts or the facts most favorable to Taravella. On

---

[9] I note that the majority's analysis of the reasonableness of Dunn's actions--after first determining (1) that Taravella has alleged an invasion of a constitutionally protected property interest and (2) that this constitutionally protected property interest is clearly established--draws on the three-step framework for qualified immunity that I believe is incorrect. I conclude that even employing a separate, "*ad hoc* inquiry into the reasonableness of the officer's conduct," *Walczyk v. Rio*, 496 F.3d 139, 166-67 (2d Cir. 2007), Dunn's appeal should be dismissed.

March 29, 2004, the day of the termination meeting, Dunn gave Taravella a letter, on his personal letterhead and over his own signature, which read, "Since the Mayor appointed you to this position, I believe that the Mayor can terminate your employment with the Town. *However, if you wish to have any sort of hearing on the matter, please contact me immediately.*" J.A. 195 (emphasis added).

A rational factfinder could conclude that Dunn offered Taravella a hearing *precisely because* he knew that she had been promised such a hearing. Accordingly, the March 29, 2004 letter undercuts the majority's assertion "that Dunn neither knew nor had reason to know about the alleged oral promise" of a pre-termination hearing.[10]

The majority also appears incorrect when it writes, "[I]t is undisputed that Dunn sent Taravella a letter the next day stating that she was not entitled to a pre-termination hearing because she was not a union employee." *Ante* at **[page 5]**. I submit to the contrary. First, it was Bryan Tynan, the Town's attorney, who sent the letter, on his law firm's letterhead and over his signature. Second, the letter makes no mention of Taravella's union status or lack thereof. Instead, apparently in response to Taravella's claim that she was entitled to a hearing, the letter states that the Commission on Aging violated the Freedom of Information Act by (1) "fail[ing] to give a reason for going in to [*sic*] Executive Session" and (2) not "vot[ing] by a two-thirds margin to put the matter [of Taravella's contract] on the agenda." J.A. 197. The letter concludes,

Therefore, *it would be my opinion* that since the Mayor had appointed you in 2002

---

[10] The majority claims, albeit without citation, that Taravella has conceded this point. "We are not, of course, bound by a concession of counsel." *United States v. Galante*, 547 F.2d 733, 736 n.2 (2d Cir. 1976).

-15-

and since the Commission on Aging did not properly approve your contract in 2003, Mayor Thomas Dunn *would be correct* in terminating your employment.

*Id.* at 198 (emphasis added).

The March 30, 2004 letter from Tynan thus does nothing more than express his opinion as to the propriety of Taravella's appointment and of Dunn's removal of her. Of course, it goes without saying that Tynan's opinions are not dispositive of whether Dunn knew that Taravella was entitled to a pre-termination hearing or whether Dunn violated clearly established law in terminating Taravella without a hearing. Furthermore, a rational jury could conclude that Dunn offered Taravella a hearing because he knew that she was entitled to one as a matter of law, but that he subsequently changed his mind and asked his attorney to write a letter suggesting that Taravella was not entitled to a hearing. Finally, with regard to whether Dunn knew that Taravella was entitled to a hearing, Taravella claims that she requested a hearing when she was told she was being terminated, and Dunn stated at his deposition that he offered Taravella a hearing.[11] Because this goes to precisely what was said by Dunn in connection with the termination, it too illustrates that it was unclear whether Dunn knew that Taravella was entitled to a hearing and that the majority's analysis does not rest either on the undisputed facts or the facts most favorable to Taravella.

Further illustrating how the majority fails to proceed on undisputed facts is the issue of whether the Town Charter supports Taravella's claim that Dunn acted unreasonably in terminating her. The Town Charter provides, "The Mayor *with Council approval* shall appoint, and may remove, all department heads and other officers and employees of the town," (emphasis

---

[11]At oral argument, Dunn's counsel claimed that it was the Town's *attorney*, not Dunn personally, that offered Taravella a hearing.

added), subject to exceptions not relevant here. If this is the case, then Taravella, by operation of law, may have been entitled to a certain amount of process before her termination. Furthermore, if Taravella were entitled to pre-termination process because of the Town Charter, a rational fact finder could conclude that Dunn knew or should have known that Taravella was entitled to a pre-termination hearing and, therefore, acted unreasonably in failing to provide her with one. Although the District Court noted this dispute, it concluded that, because there were material disputes as to the employment agreement that precluded the entry of summary judgment, it was not necessary to parse this and related disputes further. Although the District Court did not resolve the issue definitively, the majority here must do so if it wishes to exercise jurisdiction over this appeal based on undisputed facts. That the majority fails to do so is yet another indication that its exercise of jurisdiction is misplaced.

In sum, although the majority purports to consider the reasonableness of Dunn's actions based on undisputed facts, the majority's analysis does not adequately address the record, which suggests otherwise, and the District Court's finding that issues of material fact are in dispute.

Assuming plaintiff's version of the facts, resolving ambiguities against defendants, and denying summary judgment as to qualified immunity on that basis is nothing new. As the Supreme Court instructed in *Saucier*, when determining whether a constitutional right has been violated, a court must "[t]ake[ the facts] *in the light most favorable to the party asserting the injury*." *Saucier*, 533 U.S. at 201 (emphasis added). This line of reasoning is well-established in our case law. *See, e.g.*, *Coons v. Casabella*, 284 F.3d 437, 440 (2d Cir. 2002) (noting that interlocutory review is available when defendant proceeds on undisputed facts, or on plaintiff's version of the facts).

-17-

In *Jenkins v City of New York*, 478 F.3d 76 (2d Cir. 2007), for example, the district court granted the defendant-police-officers' motion for summary judgment on the basis of qualified immunity in a § 1983 false arrest case. Among other things, the district court ruled that the officers' actions in arresting the plaintiff (Jenkins) were reasonable, because he fled when police identified themselves; Jenkins denied this fact. In reversing the district court's decision, we held that, "[o]n the defendants' motion for summary judgment, *the district court was obligated to construe this factual ambiguity in Jenkins' favor*. . . . Instead, the district court construed the facts in favor of the detectives." *Id.* at 89 (emphasis added). Just like in *Jenkins*, the question of qualified immunity in this case cannot be decided until the underlying factual disputes are resolved.

The majority focuses on the fact that, because certain facts may have been ambiguous, it was reasonable for Dunn to deny Taravella a hearing. *See, e.g., ante*, at **[pages 13-14]**. While a state actor might be entitled to qualified immunity if he is presented with a truly ambiguous scenario in which it is unclear whether or not his conduct would be unlawful, the record here does not reflect that Dunn was confronted with an indisputably ambiguous situation. Because there are material issues of fact about whether Taravella was promised a hearing and whether Dunn knew of that promise, we do not know what situation Dunn faced and, therefore, we do not know whether Dunn faced a situation so ambiguous that a reasonable person would not have known whether his conduct was unlawful. "If there is a material question of fact as to the relevant surrounding circumstances, the question of objective reasonableness is a question for the jury." *Green v. City of New York*, 465 F.3d 65, 83 (2d Cir. 2006) ("If there is no material question of fact, the court decides the qualified immunity issue as a matter of law"); *see Kerman*

-18-

*v. City of New York*, 374 F.3d 93, 109 (2d Cir. 2004); *see also Husain v. Springer*, 494 F.3d 108, 134 (2d Cir. 2007) (citing *Green* and *Kerman*).

> "Though '[i]mmunity ordinarily should be decided by the court,' . . . that is true only in those cases where the facts concerning the availability of the defense are undisputed; otherwise, jury consideration is normally required . . . ." *Oliveira v. Mayer*, 23 F.3d [642, 649-50 (2d Cir. 1994), *cert. denied*, 513 U.S. 1076 (1995) (quoting *Hunter v. Bryant*, 502 U.S. 224, 228 (1991))]. After receiving "*the jury['s] deci[sion as to]* 'what the facts were that the officer faced or perceived,'" the court then may "make the ultimate legal determination of whether qualified immunity attaches *on those facts*." *Stephenson v. Doe*, 332 F.3d 68, 81 (2d Cir. 2003) (emphases added); *see, e.g.*, *Warren v. Dwyer*, 906 F.2d 70, 76 (2d Cir.) ("*If there are unresolved factual issues which prevent an early disposition of the defense, the jury should decide these issues* on special interrogatories. The ultimate legal determination whether . . . a reasonable police officer should have known he acted unlawfully" should be made by the court "on the facts found" by the jury. (emphasis added)), *cert. denied*, 498 U.S. 967 [(1990)].

*Kerman*, 374 F.3d at 109 (first, third, and fourth alterations in original).

Of course, the presence of disputed material facts does not conclusively establish that Dunn *did* act unreasonably. However, there certainly are facts in the record, if viewed in a light most favorable to Taravella, that would permit a court to find that it was unreasonable for Dunn to terminate Taravella with no process whatsoever.

The majority states, "Because a reasonable mayor could understand the Agreement [between Taravella and the Town] to provide that Taravella could be fired without a hearing, it cannot be said that Dunn acted unreasonably in doing so." *Ante* at **[page 13]**. I take no quarrel with the statement that it *could* be said that Dunn acted reasonably. I part company with the majority because the resolution of that question depends on disputed facts. Dating back to at least 1990, this has been the rule in qualified immunity cases. These determinations are certainly not to be made by an appellate court on interlocutory review. *Cf. Genas*, 75 F.3d at 830 ("[A]n

-19-

appellate court should not review even the legal issue of whether th[e] finding of a factual dispute was correct.").

Dunn argues in his brief that his conduct was nevertheless reasonable because he relied on the advice of the Town's attorney. This argument is meritless. We have held that "reliance upon advice of counsel . . . cannot be used to support the defense of qualified immunity." *In re County of Erie*, 546 F.3d 222, 229 (2d Cir. 2008). Other Circuits hold similarly. *See Sueiro Vasquez v. Torregrosa de la Rosa*, 494 F.3d 227, 235 (1st Cir. 2007) ("Reliance on advice of counsel alone does not per se provide defendants with the shield of [qualified] immunity."); *Silberstein v. City of Dayton*, 440 F.3d 306, 318 (6th Cir. 2006) ("This circuit has determined that reliance on counsel's advice constitutes a qualified immunity defense only under 'extraordinary circumstances,' and has never found that those circumstances were met."). At least some other circuits seem to adopt the "extraordinary circumstances" approach. *See V-1 Oil Co. v. Wyoming*, 902 F.2d 1482,1488-89 (10th Cir. 1990). However, in this case, the record barely provides enough evidence from which we could accurately sketch the putative advice of counsel defense, let alone determine whether such an exception would be met here.

But once again, the majority misapplies the applicable law. In a footnote, the majority writes that it "need not decide whether reliance on legal advice constitutes an 'extraordinary circumstance' sufficient by itself to give rise to qualified immunity.'" *Ante* at **[page 13 n.3]**. The majority's citation for this proposition is an eight-year-old case from the Northern District of New York. What the majority fails to recognize, however, is that this very approach was rejected by our Court just last year. *See County of Erie*, 546 F.3d at 229.

The lack of binding precedent in support of the majority has a profound effect in this

case. The majority writes that "the solicitation of legal advice informs the reasonableness inquiry" and concludes that Dunn acted reasonably because, *inter alia*, he "sought legal advice, and" --- presumably acting on that advice --- "reasonably concluded that Taravella could be terminated without a hearing." *Ante* at **[page 13]**. This analysis completely undermines the holding in *County of Erie*. If an official's *reliance* on counsel's advice does not give rise to immunity, 645 F.3d at 229, then the mere fact that the official "solicit[ed]" or "sought" legal advice *certainly* cannot support an immunity defense. And as I have pointed out above, there are several discrepancies as to the respective roles played by Dunn and Tynan, the Town's attorney, making it unclear exactly what advice Dunn was relying on and when.

**IV. Conclusion**

In this dissent, I seek to make two main points.

First, I attempt to call our Court's attention to the apparent long-standing inconsistency in our case law regarding the proper standard for analyzing qualified immunity claims. We should — and it is my hope that we soon will — resolve this inconsistency by holding that qualified immunity is decided in accordance with a *two-step* analysis: (1) a court must determine whether the facts, taken in the light most favorable to the party asserting the injury, show that the state official's conduct violated a constitutional right; and (2) even if a constitutional violation can be made out on a favorable view of the submissions, the official is entitled to immunity if the right was not clearly established.

Second, because qualified immunity is not available at the summary judgment stage when there are material facts in dispute, and because the District Court found that such disputes exist in this case, I would dismiss Dunn's appeal of the denial of summary judgment on the basis of

-21-

qualified immunity. Although this should be tested using the two-step method described above, I would hold that Dunn's appeal should be dismissed even under the standard employed by the majority; when the District Court finds that material facts are disputed as to the qualified immunity analysis, we lack jurisdiction to disturb the District Court's finding that these material factual disputes are genuine.

Therefore, I respectfully dissent.